## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JIBRIL WALTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:08CV1616 AGF |
| | ) | |
| STEVE LARKINS, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  After reviewing the case, the Court has determined that Petitioner is not entitled to relief.  As a result, the Petition will be denied.

### Background

Petitioner was convicted by a jury on one count of felony involuntary manslaughter and one count of armed criminal action.  Walton v. State, 240 S.W.3d 783, 784 (Mo. Ct. App. 2007).  He was sentenced to life imprisonment.

The facts of this case were recited by the Missouri Court of Appeals as follows:

The evidence adduced at trial showed that, between March of 2002 and August of 2002, Movant had several contentious verbal and physical altercations with a group of men that included Dennis Williams, Jimmy Walker, Billy Jones (Jones), and Dartanyus Harris (Harris). On August 18, 2002, Movant was driving around in search of the aforementioned

men when he encountered Jones and Harris. They were in Jones' vehicle, which was parked at the National Guard Armory in Cape Girardeau, Missouri. Neither Jones nor Harris had a gun. The parties exchanged words from inside their vehicles, and Harris then asked Movant if he had been following them. Movant responded, "There ain't nobody following you all." Harris leaned back in his seat, and Jones leaned up to say something to Movant when Movant started shooting. After firing "five or six" shots at Jones' vehicle, Movant drove off. Jones suffered three gunshot wounds and was rushed to the hospital by Harris. While at the hospital, Jones identified Movant as the shooter. Jones died twelve hours later, following surgery to repair the damage caused by the gunshot wounds. Movant was arrested the following afternoon. After being arrested, Movant told a police officer that he shot Jones because Movant thought Jones and Harris were going to shoot him. During the trial, Movant testified that, when Harris moved back in his seat, Movant believed Harris was retrieving a gun from the floorboard. Movant felt that he "was going to die and [he] had to shoot and that was the only way [he] was going to get away from there alive. . . ."

Prior to the close of all of the evidence, the court held a preliminary jury instruction conference. The State tendered Instruction No. 5, which was patterned after MAI-CR 3d 306.06, to submit the issue of self-defense to the jury.  This proposed instruction included the following language:

> One of the issues in this case is whether the use of force by [Movant] against [Jones] was in self-defense. In this state the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations.
>
> *A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks another, is not justified in using force to protect himself from the counter-attack that he provoked.*
>
> . . . .

-2-

On the issue of self-defense in this case, you are instructed as follows:

*If [Movant] was not the initial aggressor in the encounter with [Jones] and/or [Harris]*, and if [Movant] reasonably believed that he was in imminent danger of death or serious physical injury from the acts of [Jones] and/or [Harris] and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

(Italics added.) The State added the italicized language to this instruction because there was evidence that Movant "pulled up and pulled the gun and started shooting so that is why he is not entitled to acquittal by self-defense. . . ." The inclusion of this language complied with the directive in MAI-CR 3d 306.06 that it is only to be used if there is evidence that the defendant was the initial aggressor. Movant's trial counsel objected to the inclusion of the language on the ground that there was no evidence Movant was the initial aggressor. The trial court ruled that the challenged language had to be included in the instruction "because there is evidence in the record . . . that Movant was the initial aggressor."

At the close of all of the evidence, a formal jury instruction conference was held. The State proffered Instruction No. 5 with the aforementioned initial aggressor language. Defense counsel objected to the inclusion of such language for the reason previously noted and submitted an alternative self-defense instruction omitting such language. The trial court overruled the objection, rejected defense counsel's tendered alternative instruction and gave Instruction No. 5 with the initial aggressor language included.

Id. at 784-85 (footnotes omitted; emphasis in original).

Petitioner's conviction was affirmed on appeal, and Petitioner's Rule 29.15 motion was denied by the state courts.

-3-

Petitioner is incarcerated at the Jefferson City Correctional Center.   Dave Dormire is the Warden of JCCC and is the proper party Respondent.

### Ground for Relief

Trial counsel was ineffective for failing to object to Instruction No. 5 because it omitted the parenthetical phrase "or threatens to attack" from the initial aggressor language and for failing to offer an alternative instruction that included this language.

### Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of

materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. §2254(e)(1); <u>Ryan v. Clarke</u>, 387 F.3d 785, 790 (8th Cir. 2004).

To prevail on a claim of ineffective assistance of counsel in the state courts, a defendant must show that counsel's performance was both deficient and prejudicial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  But to prevail on an ineffective assistance of counsel claim in a § 2254 case, a Petitioner

> must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.  Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002).

## Discussion

Petitioner argues that trial counsel was ineffective for failing to object to Instruction No. 5 because it omitted the parenthetical phrase "or threatens to attack" from the initial aggressor language and for failing to offer an alternative instruction that included this language.

The Missouri Court of Appeals applied the <u>Strickland</u> analysis to this claim. The court analyzed this claim as follows:

> At trial, Movant claimed that he shot Jones in self-defense. That defense, however, was not available to Movant if he was the initial aggressor in the incident. <u>State v. Huff</u>, 831 S.W.2d 752, 754 (Mo. App.1992); § 563.031.1(1). MAI-CR 3d 306.06, which is used to submit the issue of self-defense to the jury, includes various provisions relating to the initial aggressor limitation on this defense. This pattern instruction is divided into parts A, B and C. <u>Id.</u> Insofar as relevant, part A states:
>
>> One of the issues (as to Count _____) (in this case) is whether the use of force by the defendant against [ *name of victim* ] was in self-defense. In this state, the use of force (including the use of deadly force) to protect oneself from harm is lawful in certain situations.
>>
>> [ *Use the material in [1] ONLY if there is evidence the defendant was the "initial aggressor." Omit brackets and number*.]
>>
>> [1] A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first (attacks) (or) (threatens to attack) another, is not justified in using force to protect himself from the counter-attack that he provoked.

The general instructions in part A make it plain that the selection of the proper phraseology (i.e., "attacks," "threatens to attack," or a combination of the two) is controlled by the evidence concerning the defendant's conduct preceding the use of force against the victim.  That conclusion is reinforced by Notes on Use 4(a), which states:

> Subject to some exceptions, the use of force in self-defense is not justified if the defendant was the "initial aggressor." If there is no evidence indicating the defendant was the initial aggressor or provoked the incident, then the material in part [1] of part A will not be used.  If there is evidence the defendant was the initial aggressor, then the material in [1] of part A will be used. . . .

Thus, the purpose of the language drawn from part A[1] is to advise the jury how to determine whether a defendant's actions have made him the initial aggressor in an incident, which would preclude self-defense being used as a justification for the defendant's use of force.  State v. Colson, 926 S.W.2d 879, 881-83 (Mo. App.1996); State v. Kennedy, 894 S.W.2d 723, 727 (Mo. App.1995); State v. Allison, 845 S.W.2d 642, 646-47 (Mo. App.1992).  Contrary to Movant's argument, the conduct of the victim or a third party has no bearing on what language from part A[1] is used to submit the issue of whether a defendant was the initial aggressor. Paragraphs [1], [4] and [5] in part C are used to identify the conduct of others that is relevant to this issue. MAI-CR 3d 306.06, part C.

"It is axiomatic that instructions must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." Coday v. State, 179 S.W.3d 343, 354 (Mo. App.2005).  Movant testified at trial that he sought out Jones and Harris on the day in question so that he could "talk to them and [he] was going to take precautions and [he] had [his] gun on [him]. . . ."  Neither Harris nor Movant testified about any verbal threats made by Movant just prior to the shooting; both agreed that the only thing discussed was whether Movant had been following Harris and Jones that day.  According to Harris, he spoke to Movant, sat back into his seat, and Movant "started shooting" as Jones leaned forward. Likewise, Movant testified he was speaking to Harris when he made a

motion as if he were reaching into the floorboard for a gun. Movant "fired when [Harris] was coming up."  As Movant did not threaten to attack Jones or Harris prior to firing upon them, there was no evidence to support the modification of Instruction No. 5 by including the "threatens to attack" language from part A[1] of MAI-CR 3d 306.06. Counsel is not ineffective for failing to request an instruction that lacks evidentiary support.  See Coday, 179 S.W.3d at 354-55; Wright v. State, 125 S.W.3d 861, 868-69 (Mo. App.2003).

Walton, 240 S.W.3d at 786-87.

Petitioner's ground for relief fails for two reasons.  First, this is purely a matter of state law.  Under 28 U.S.C. § 2254(a), a district court may only entertain a petition for writ of habeas corpus if the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, grounds that do not state a constitutional issue are not cognizable in a federal habeas petition. E.g. Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997).  As a result, this ground is not cognizable in these proceedings.

Second, even if this ground were cognizable, the decision of the Missouri Court of Appeals on this matter is not contrary to, or an unreasonable application of, clearly established federal law.  The court analyzed this claim under the correct standard.  Its analysis of the Instruction at issue is clearly supported by the plain language of the Instruction itself and the notes, and the state court's finding that the evidence did not support the parenthetical language requested is not only reasonable, it is beyond

question.  As such, the Court agrees that counsel cannot be ineffective for failing to request an instruction that is not supported by the evidence or for failing to raise meritless objections.  See Tatum v. Dormire, 183 F.3d 875, 878 (8th Cir. 1999) ("due process is not offended when a state trial court refuses in a noncapital case to submit an Instruction not supported by the evidence").  As a result, Petitioner's ground for relief must be rejected.

## Conclusion

For these reasons, Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a Certificate of Appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue. 28 U.S.C. § 2253.

**IT IS FURTHER ORDERED** that the Clerk shall docket this action as <u>Jibril</u>

<u>Walton v. Dave Dormire</u>.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 12th day of September, 2011.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE